of America, et al. Mr. Madden, for the appellate. Mr. Caleroni, for the athletes. Mr. Madden, good morning. Good morning. Good morning, Your Honors. May I reserve two minutes for rebuttal? Raj Madden, Skadden Arps, for the appellant. May I proceed? Your Honors, this case is about a review of an appellant treaty benefits. The treaty at issue is the U.S.-Swiss treaty, and the specific provision at issue is a common provision among U.S. tax treaties, referred to as the Limitation on Benefits provision. And in the U.S.-Swiss treaty, it's in Article 22. Starr requested discretionary relief under this treaty when it relocated from Ireland to Switzerland and made this application in 2007. After approximately two and a half years of the IRS competent authorities' review of this determination, excuse me, this application, they denied the received from AIG, for which it held a large interest. It sought a refund for 2007. That's correct, Your Honor. And would, would, I wasn't clear on this, would it, does the determination apply prospectively? Would that also have put Starr in the position going forward for as long as, I guess, as in Switzerland that it would be entitled to the same special tax treatment, or is it done on an annual basis? That's a good question. It would be prospective. The reality of it is that the, the most significant aspects of the dividend, excuse me, of the taxes at issue are in the 2007 year. The 2008 year has been resolved, and then the financial crisis hit where AIG hasn't been paying substantial dividends. However, there are dividends, and if the court were to determine that the competent authority was arbitrary and capricious and reversed, and Starr was entitled to the treaty benefits, yes, they, that would be an ongoing benefit. And given that Starr has not relocated from Switzerland, they, they would continue to be eligible. But the first bottom line purpose of this lawsuit is to get the refund for 2007? That's correct, Your Honor, yes. All right. And did you ask for, or maybe you're just saying this is just how it works, that that would also apply? You didn't specifically ask for a declaration that it would, you'd have that status going forward? Maybe you don't need to, I'm not sure exactly how this thing works. No, it's, it's a very good question, and it can be contentious. In this case, we, we requested a ruling. The effect of the application is a ruling that would then establish our position as a qualified resident of Switzerland for purposes of the treaty, and therefore we would be entitled to the 15 percent benefit. So after two and a half years of the competent authority's review, several, dozens of questions, the competent authority flip-flopping at first preliminarily adverse and then preliminarily in favor, they ultimately determined that Starr was not entitled to these treaty benefits. I just have some questions about our procedural posture. So you started with a refund action under 26 U.S.C. 7422, and then the district court said there's a political question problem with that, but bring an APA action to challenge the IRS determination. But the goals of the two, both the 7422 and APA suit are the same, it's to get a refund for 2007, that's the goal of the APA action. That's correct, Your Honor. How, I don't understand how your litigation isn't barred then under the APA. I get that you could bring a refund action, and you're saying maybe you don't get it either because you didn't agree with the district court putting you into the APA box, but I'm just not aware of any situation where someone wasn't able to bring a refund action for, there was something about the APA here, I guess you disagreed, but the district court said political question, and then someone said go bring an APA action, which will have the end result, as you said, of giving you money, the 2007 tax refund. Are you aware of any case where the APA has been used like that? I'm not sure whether it's been used that way, but there's no reason under both the APA statute and the refund statute why this would be a problem. In fact, just so I make sure I'm answering your question, the way the APA statute works, as I'm sure you're aware, is that the only time the taxpayer can actually bring an APA action is if they've exhausted all their other remedies, including a refund proceeding. And so the fact that the district court ruled... But APA actions give you equitable relief, either declaratory judgment or an injunction, neither of which is available either to compel tax payments out of the treasury or to establish taxpayer status in a forward-going basis. Those aren't available under the APA. You have to do it through a refund action. Now, I understand that that's how you started, and this may be a shift the district court prompted, but I just don't understand how we're... We have an APA action here at all, and why we don't have to look at everything through the lens of a 7422 action. Well, we should talk about the 7422 action, but we think there is a path, a very clear path, for us to get a refund that would not be barred under the APA action. And it should be fairly straightforward in this sense. If the court agrees that the competent authority were to correctly adhere to these standards, they would determine, we believe, based on the facts in the record, that we're not treaty shopping, that we did not have as a principal purpose obtaining treaty benefits, in which case they would grant our application. And in terms of statute of limitations bar, that has been extended by virtue of our amended tax return, which has the effect of tolling the statute. So the way that we get our money, so to speak, is by having the competent authority, like any agency, where a court has determined that they were arbitrary capricious, make an opposite decision, granting the benefits, in which case we would have both. We would have the permanent qualified treatment as a Swiss resident, and we would be entitled to our refund. If we were determined that the agency was not arbitrary and capricious on the purpose determination, that ends this case, right? We don't need to go through all the gymnastics that the district court seemed to think it had to go through. I shrug my shoulders on the political question. I'm not sure how that's getting in there, but in any event, forget all of that. If we determined that either by virtue of a determination that could be made under 7422 and or the APA, the agency was not arbitrary and capricious in its determination that was an improper purpose, the case is over, right? I understand you don't agree, but is that right? Yeah, you're asking me a procedural question. I'm asking you if we were to decide the agency was not arbitrary and capricious in that determination, the case is over. I generally agree, Your Honor. The one qualification I have is because in order to determine this case as an APA action, you have to first have that point you just made and a refund action. In other words, is that dispositive to the refund action? Is what dispositive? A determination by this court that they were not arbitrary and capricious. Well, you can't get a refund unless you have a determination with respect to purpose. That's correct. So whether you have the APA or not, you still have to have that determination. I agree with that. So, I mean, I don't even know that you need an APA action. If you read the statute and treaties together, you can't get a refund unless you have a determination with respect to purpose that's favorable to you. That's correct. Because the treaty is an overlay on the 7422. It's there to be looked at. You can't get the refund without that determination, right? That's correct, Your Honor. Okay, so that's why I say if we agree, whether it's under the APA standard or just judicial review, we looked at it and we find no infirmity in the agency's determination with respect to purpose, you lose. We don't have to go through all of these political questions, standing. It's a straightforward determination. If the agency was okay in that determination, you lose. You cannot possibly get a refund. The reason I'm pausing, Your Honor, is because under a refund action, the evidentiary rules would be slightly different. Yeah, but I understand. Take whatever evidentiary rules you want to take, and hypothetically, we agree with the agency. You lose on purpose. But we would have the right to introduce new evidence in the refund action. It wouldn't just be limited to the administrative record, which is why there's a gap there. Well, haven't you effectively done that by putting the APA action in play? All of that evidence is in. The APA action is limited solely to the administrative record. But I mean, as an effective matter, what more is there for a court to look at? All the evidence is in. Well, there was never any witness testimony. In every APA case, the four corners of the administrative record is what was presented to that agency. When you're in a de novo proceeding in front of a court, you can introduce testimony, new documents. It is a de novo proceeding, which is why the gap could exist between your question. In other words, if it's a refund action and the evidentiary rules are different, we would be entitled to introduce new evidence that might not. So the threshold, you were dismissed at the threshold in your 7422 action, and your point is that had that not happened, you would have had the opportunity to bring more evidence in beyond the agency's record to challenge the IRS determination about a primary or principal purpose here. That's right. In a refund action, the proceeding is de novo. We would be entitled to discovery A, and B, introduce new evidence beyond the administrative record. Does the administrative record include everything that you gave them for the two or I forget how many years that were back and forth here, or is it all we have is this determination letter? No, no, no. It's the entire back and forth for the two-and-a-half-year period. And yet you still have more that you would want to put in? We would, yes, and probably much more importantly than what we want to put in, because we believe the decision is arbitrary and capricious, we want to get behind the decision. Without violating deliberative process, we believe that the decision was conclusory and was not well-reasoned where discovery might reveal the intentions of the IRS. I guess that's the opposite of conclusory because they didn't actually conclude anything in that decision. We completely agree. Now, are you talking about something with respect to the consultation procedure when you say you want to get behind something? We do not want to get behind the consultation, Your Honor, but we want to get behind the analysis that was performed here that caused them to conclude without drawing any conclusion, having an equivocal response, and applying these factors where the factors have no relationship to the principal purpose test. They have no relationship to the notion that this entity, STAR, had already satisfied the principal purpose test. All you could win doing it your way was a court order for the agency to consult, because you can't win without consultation. So all you could win was a court saying, well, they've called in to question, legitimately, your decision. You haven't put in enough to win on purpose yet. Therefore, the court is now going to order the agency to consult. Now, you agree, a court, after consultation, we can't look behind that, but they can come back with another decision and better justify what they've done, and you'll lose, right? Your Honor, I do not agree with that respectfully. Which part? I don't agree with the notion that all the court could do was order the IRS to consult. At this point, you can't win without consultation, right? I agree. Right? Isn't that right? You are right that I can't win without consultation, but I think we have a different interpretation of what consultation involves. And when I say we have a different interpretation, if you look at the course of conduct in this particular case, meaning the interaction that this competent authority had with the Swiss authorities with respect to our proceeding, they treat it as a ministerial notification. They haven't claimed consultation yet. May I, Your Honor? Go ahead. So if I could have – oh, by the way, I'm way over time. Is that okay? Go ahead. If you have your joint appendix, I'm at Joint Appendix 255-256. That is the determination letter, correct? There's two things I want to point out to you on this, and then we're going to flip the page. This letter is dated October 13, 2010. If you look at the second-to-last sentence on 256, it reads, we are in the process of notifying the Swiss competent authority of our determination as required under the U.S.-Swiss treaty. Okay? So A, they believe that they have a notification requirement, not consultation, as reflected by their citation to the U.S.-Swiss treaty, which has no reference to notification. It's only consultation. I don't know where that gets you off my path, but go ahead. Let's look at the next page. All right. Okay? So two days later, after the final determination has been made, and the final determination has not only been made, but it has been presented to the taxpayer, the applicant, SCAR, the Department of Treasury, the IRS, then sends a letter on Joint Appendix 257, and the last sentence of the first paragraph reads, in accordance with the consultation provision of Article 226, we provide you with a description of the facts relevant to this request and our conclusion regarding its proper disposition. But they don't have to consult with Switzerland to deny benefits. The provision says that someone may be granted benefits after consultation. What they're doing here is just notifying them of a denial. That would be, there's nothing in the treaty about notifying them of denial. We only require Switzerland consultation with Switzerland to grant benefits. So I'm not sure how that letter provision helps you. And it's because the language in the treaty seems to suggest that it's a one-way street. That seems to suggest is what it says. It says after determination. The question is whether after determination, followed by grant, is making an exclusive requirement on grant, or it means after determination. I will tell you that the technical explanation very clearly indicates that the competent authority has to consult both for denials and for grants. I'm at ADD 26, which is paragraph 6 of Article 22. And it is the paragraph that starts, it is assumed. You see that? The last sentence. The competent authority of the source country, excuse me, the source state, will consult with the competent authority of the other state before making a determination. And so the point is, so now you have three points of reference here. Wait, that's my point. So then using your scenario and my scenario, the most you could win initially is a court order to consult before you make a final determination. But, Your Honor, my point. You're saying they didn't really consult. Okay, fine. So all you could come away with is you have to consult before you make a final determination. Then they could come back and make the same determination against you with better reasoning. I would be better off in that circumstance than I am today, A. And, B, this is. . . Tell me if I'm right or wrong. I'm trying to understand your legal theory. Isn't that right? Taking your reading of Article 22, the most you can win here is a court order for the agency to engage in consultation. And then we'll see what happens. After they engage in consultation, then they'll come back with another decision. Likely to be adverse to you, but in any event, you're saying, well, you're better off. At least you have something. They'll come back with a fuller decision post-consultation, and that's it. Then you have to come back to court. Well, Your Honor, I have three answers to that, if I can do that. Number one, and probably most importantly, I do not think that they can come back adverse to us because we think if the standard is correctly applied, we cannot have as a principal purpose obtaining treaty benefits when we are going from a jurisdiction. . . Well, that's on the merits. Okay. But if this court were to establish the correct standard and to instruct the agency to apply the standard, they would be required to adhere to that standard. If they then make a decision to grant, I am confident that the Swiss are not going to say you should deny because the Swiss are protecting their own residents. No, no, no. Wait. We don't really care what the Swiss say, right? That was my next point. On the consultation request, we don't care what the Swiss say. They're just required to talk to the Swiss. It may or may not be beneficial, but we don't really care what the Swiss say. That's not going to be dispositive, right? That's right, which is why my second point is I don't think that this court is limited in its order to just say go consult with the Swiss because what the course of conduct here reveals, in the more controversial scenario for the Swiss where a denial has been rendered, that's controversial because they want to protect their residents, all the United States did, all the IRS did was send them a letter saying here's what we did. And the point is that tells you that they're treating it as a notification requirement, which means it's ministerial, and this court can then order a refund. Alternatively, as we present in our briefs, the court can order a refund and hold jurisdiction and see what the consultation reveals. I have a lot of respect for that. No, no, no. See what the agency says post-consultation. That's different from seeing what the consultation reveals. That's true. Because you agree we can't get behind the consultation. My view is that you absolutely can just order a refund because the consultation requirement is not, first of all, seeking an agreement from the Swiss. Right. And second of all, the course of conduct reveals that it's ministerial. I mean, you just don't want any more delay. I understand. You want money in hand. And what I'm suggesting to you is it looks to me like the statute and treaties require consultation first. And we don't have it yet, even on your theory. You're saying there hasn't been any consultation. They just gave notice. So I don't know how you're left with anything other than a request from this court to tell the district court to order consultation, and then we'll see what happens. But with the instructions that the standard be applied this way, I have confidence that the agency is going to do it the right way. Sorry, now I'm a little confused. I thought you were showing us that, in fact, notification, consultation, the same thing, because the consultation happens while they're deciding, and, in fact, it's already occurred in this case. Yes. That is my view. All right, so we're already past that, and we're just looking at the agency decision to see if it's sufficiently reasoned. You just switched. No, I'm making both. You told me there was no consultation. I'm forum shopping here. No. I know. I want you to know I noticed. That's right. Thank you. Thanks for calling me out on that. No, I honestly have both points, which is, A, I believe this course of conduct reveals that it is a ministerial act, and, therefore, it is not significant, but, secondly. So notification, consultation, same thing, not forum shopping, same thing. Same thing, and I'm not so sure I'm saying that they've already undertaken their requirement, because if they come to a new conclusion, I can't say that it's been satisfied by this exchange. Got it. Okay. Can I ask you something? You said several minutes ago that what was wrong with this determination letter is its conclusory. I thought your main point was that it was inadequate, that they did not consider the charitable regulations that were either stronger, according to your matrix, or laxer, according to your brief, and the litigation threat that was smaller in Switzerland, and they say nothing in the letter about the fact that you're moving from a country that has given you the benefit to a country that may or may not give it to you. So I saw this case as, if it's inadequate, and they haven't considered some evidence you put before them, we send it back to consider it. We do that because it may be a fiction, but they could change their mind. I mean, they may not have, they vacillated in those two and a half years, and they may say, we never thought about the fact that you were moving from Ireland to Switzerland, from an automatic to a maybe, and so the whole consultation point is after, if we send it back, after the agency says, nope, we stay right where we are. Yeah. So, again, three points, but I'll be quick. One is, I shouldn't have said conclusory. I meant result-oriented. They were result-oriented, and that's what's reflected here, because there is no evidence to support a principal purpose when you have the circumstances you just described. All right, but I thought you also argued they ignored your other points. They did, because they were driving to a result they wanted. They didn't take into account key facts, many of which you just identified, and identified facts that were, frankly, irrelevant. The most significant element here that I just want to point out, and then I know I'm way overt and I'll stop, is that if you just think about it this way for a moment, at the time when the competent authority was considering STAR's application, STAR had been a qualified resident of Ireland. It was receiving automatic treaty benefits. The consequence of that is that it had passed, it had satisfied the principal purpose test at that moment. In Ireland. In Ireland. Residing in Ireland. In Ireland, under the mechanical tests, which are a surrogate for the discretionary tests, which are intended to achieve the same objective of rooting out principal purpose treaty shoppers. And so it had already satisfied all of the four criteria, meaning that all of the four criteria were present when STAR moved from Bermuda to Ireland in 2004. And nevertheless, it qualified automatically, mechanically, to that treaty. And despite that fact, this competent authority is using the same facts that STAR satisfied in an automatic provision to say that it violates the principal purpose doctrine. When the two are supposed to be co-equal. The mechanical tests are supposed to be co-equal with discretionary. They're supposed to be surrogates. And you might say, well, they're different. One is with Ireland, one's with Switzerland. They were executed two days apart. And the only reason STAR doesn't qualify. I'm not sure that helps you. If you've got things executed two days apart that are written differently, our assumption would be they meant to write them differently. They meant to write them differently. That's right. The difference between the two, if that was a justification, is that one treats both non-profit entities as qualified entities. In other words, if you're a non-profit entity, you can qualify for these treaty benefits. And so does the model treaty and all the other five treaties that we've identified. The difference is that the Swiss treaty doesn't make a cross-reference like the other treaties do, so that owners of the profitable entity can also qualify. And the significance of that, first of all, we think it's a glitch, but you don't have to make that conclusion. The significance of it to this conversation is it has nothing to do with any of those four factors. It doesn't have to do with the notion that STAR started out in Panama 75 years ago. It doesn't have to do with the fact that STAR was going to receive a dividend at some quarter end, which it would fail no matter when it left. It doesn't have to do with anything with the fact that it was only in Ireland for two and a half years. And it doesn't have anything to do with the fact that they had U.S. shareholders. None of those factors are relevant to the distinction between the Irish treaty and the Swiss treaty that caused STAR not to qualify for the Swiss treaty automatically, but did allow it to qualify for the Irish treaty, which establishes, when they're negotiated at the same time, that there is no policy reason for denying STAR treaty benefits, A. And, B, it also establishes that the principal purpose test shouldn't be discriminatory in that manner, which means that the fact that the competent authority didn't even try to reconcile any of this, didn't try to explain why it is that under the mechanical provisions in Ireland for a treaty that's negotiated contemporaneously, you do qualify. And yet we're going to use the same factors that were present in that case and not allow you treaty benefits in the Swiss treaty. I just want to ask one thing to get back where I started on procedure. Please. And that is, all your arguments about process, what the court could have done, should have done, all of that could have been done through the—your position could have been done through the 7422 action. You didn't need the APA action. That's correct. Okay. And do you know how the IRS decision is—the decision of this case, the termination, would be reviewed in a 7422 action? Do you have the same arbitrary and capricious analysis or—no, I just don't know. It's a great question. You start out with the same initial presumption of arbitrary and capricious. The difference is— Presumption of not arbitrary and capricious. Yeah, not arbitrary and capricious. But the difference is it's a de novo proceeding. You're not limited to the evidence from the administrative record. Again, there's no factual evidence. But the burden is the same. Your burden is the same, to show that it's arbitrary, capricious, unreasoned. Yes. Okay. Thank you. All right. Thank you. We'll give you some time in reply. Thank you. Mr. Calderon. Good morning, Your Honors, and may it please the Court. I'm Richard Calderon on behalf of the United States. To start with the procedural issues that have come up, Judge Edwards is correct that Starr cannot receive an outright award of a refund at this time because of the consultation requirement in the treaty. What that means is that Starr does not have a refund claim because, as this Court held in its en banc opinion in the Cohen case, money judgments are the only relief available in refund suits under 7422. There is no equitable relief available. That's what they want. I was quite surprised to see that the IRS was willing to allow people to bring APA actions to have a declaration concerning their status, their legal taxpaying status, which is always, the IRS position is always that it has to be through 7422. That's like Bob Jones' case and all of these others. Cohen was completely different. That was about a pure challenge to procedures that the IRS had. It was not an individual taxpayer saying, here's what my taxpaying status should be. That's what you have here. That's never done under the APA. And they said they want a refund. That's the end game here. You can't do that under the APA. That is the end game, Honor, and it's true. You can't order a refund under the APA. They simply cannot get a court order ordering a refund. And we can't declare their legal taxpaying status under the APA. The Declaratory Judgment Act won't allow that. No, but what you can do is issue an order vacating and remanding for further proceedings before the agency, just as in review of any other agency document. But we have this APA action where we can never actually do the end thing. We just keep focusing on the reasoning here, but somehow there's some APA action where everyone says that you can't ever actually get to what the litigation is about. That makes no sense to me. Why wouldn't this just all be done under a 7422 action? Your Honor, but for the consultation requirement in the treaty, it would be. But the treaty, as Judge Edwards said, as the district court held,  Well, then I thought your position would be then if you're right on political question, then they lose on the merits of their refund action, not that you go get to have a declaratory judgment or injunctive relief pertaining to a taxpayer's legal status, taxpaying status. Can you say that aloud under the APA? Your Honor, I'm not aware of any, but it wasn't brought up in the briefs. We can certainly look. It's jurisdictional. Well, the political question document is jurisdictional, yes, but No, no, no. Whether you can have an APA suit, like this is jurisdictional as opposed to 7422. I don't see why everything can't be subsumed under 7422. I mean, any of the questions that are related here, the availability of a tax refund is in part affected by what Article 22 means. Your Honor, but the consultation can affect the ultimate outcome. It's not a notification requirement. Article 5 Let's assume that's all right. All I'm saying is why isn't 7422? All that we're really looking at is I'm asking for a refund, and the agency is entitled to say, Yeah, well, you have an additional, you, this taxpayer, and they're not disputing who they are and what the requirements are. You have an Article 22 requirement, and we have to make a determination. There has to be a determination pursuant to Article 22, then go into Paragraph 6. And we're not making that determination. It's adverse to you, so you lose. If they're right that what you've offered under purpose is inadequate, then it seems to me the court is in a position in saying to the agency, What you've done is inadequate, and you need to do what is necessary, which is consult, and then you can make a determination as you see fit, and we'll see what happens. Your Honor, but that's exactly the relief that would be available under an APA suit. That's beside the point. The question is why is it not available under 7422? It's a refund provision, and that's all they're seeking is a refund, and your answer is you can't get a refund unless we go through these requirements, and everyone agrees on that. You have to give a reason, and they're saying you haven't given the reason, and within that is a, I don't see how the consultation has anything to do with political question. It's just the agency has to go consult. No one is going behind the consultation. They're not seeking to do that. So that to me seems bogus. But I don't see what, I'm not understanding your concern. Our concern, Your Honor, is where I started, which is that in the Cohen case, this court held, and as I read Cohen, it's not, doesn't hinge on the particular nature of the claim set, that equitable relief is simply categorically unavailable in suits under 7422, and therefore this intermediate step of saying, you know, IRS, go back and do more, isn't available in a refund suit. It's a money judgment or nothing. Okay. So then you lose. Is that how it works in a refund suit? If a court, I'm talking about this particular case, if someone brought a suit and a judge looked at the IRS's reasoning and said, that's arbitrary and capricious, then the IRS loses the refund action. Your Honor, except that, as opposing counsel stated, the standards that govern refund action, the evidence that come in are different. I guess factual evidence may come in. I'm talking about how all the facts are in, and we've got this piece of paper. If we had a decision that just didn't deal with any of the facts, and they just said, we just can't come to a decision, we can't decide quite where you should be, golly gee, it's hard, there's a lot of evidence, so we're not going to give you a tax refund. And what would a court do? Would it just say you lose, or would it have the ability to say, that was entirely unreasoned, try again? I think, Your Honor, it would depend, because a refund action is coming up from the district courts just as any other. I'm talking about how the district court will do this. In the district court level. My belief, and I haven't given this a great deal of thought, but my belief as I stand here is if the IRS loses a refund action, the taxes are funded. So that's why you want the APA action. You get another bite at the apple on reasoning. And by the converse, Your Honor, the reason that Starr wants a refund action is that the IRS wouldn't get another bite at the apple. No, I think they want a refund action because they want a refund. Well, yes, exactly, and they want a refund without giving the IRS another chance to go through the consultation requirement, write another letter, things like that. That's how it's supposed to work. I mean, what I also can't quite figure out is how, as Judge Emmerich has been saying, you could have a political question as the answer to a taxpayer's refund action. If taxpayer, this is my property, you've got it, you've got no legal entitlement to it. The government can do that, they can take people's money, and then when they try to get it back, say, sorry, a political question? Your Honor, this is a very narrow circumstance in which the taxpayer's ability Has it ever been applied? Has political question ever been applied in the tax refund case? I'm not aware of any case in which it has, Your Honor, but this is the first case in which a determination under a tax treaty has ever made its way to federal court, and so it's not surprising that this particular situation hasn't arisen before. Can you explain to me exactly how the consultation process works in practice? When it happens, and can Switzerland veto a decision if the IRS says we think someone's qualified, they're the poster child for this exemption, for this exception, discretion? Your Honor, I only know what's in the administrative record of this case, which is that Switzerland does not have a veto. It does not require an agreement, but it is more than a notification, and the difference between Article 3 and 2 But they can't change the outcome. They may change the outcome. I thought you said they didn't have a veto. They don't have the power to change the outcome, but the consultation implies that the competent authority of the United States is going to listen to Switzerland and take them into account, and that can be outcome determinative. So what happened here? The letter talks about you gave the notification. You had the exchange with Switzerland. What happened here? What happened here is the consultation has not happened yet because under Article 2826 of the treaty, the consultation must only precede a grant of benefits, not a denial of benefits. That's contrary. That's how I read the treaty, but then, as they pointed out quite correctly, the technical explanation says exactly the opposite. That's correct, Your Honor, but where the treaty and the technical explanation are in conflict, the treaty governs. The technical explanation is essentially legislative history to a statute. Well, then why were you notifying Switzerland? Because presumably the IRS wanted to notify the Swiss government that it had gotten this request for benefits and denied it. Just as under Article 203 of the treaty, the IRS would notify the Swiss government and vice versa about completed changes in domestic law. So you would have the burden of proving political question, and so your evidence, what evidence does the government have in this case to establish a political question? Your Honor, the consultation requirement is a diplomatic exercise between the U.S. competent authority and the Swiss competent authority. That exercise can be outcome determinative of a request for benefits under Article 226. What evidence is there of that? Well, Your Honor, given that this has never come up before and that it hasn't happened in this case, we can't be certain that it would happen in this case. But on the flip side, you know, Starr has the burden of proving standing, and as the district court held in its opinion, for the same reason, because the courts may not predetermine the outcome of this diplomatic exercise, Starr's refund suit is not redressable. Well, that just doesn't, respectfully, that just doesn't follow at all. You've got a refund action. They're coming in saying the IRS hasn't justified its denial of a refund. Judge Henderson gave a bunch of considerations, for example, saying you just haven't supported your position, taking your money away. You need to say we don't need to issue an injunction. All we need to say is you haven't supported your position, IRS. We're sending it back. We don't get it. We're sending it back. Everyone knows that you can engage in consultation, and, indeed, you must engage in consultation. You certainly can't say we refuse to engage in consultation. They would otherwise win, but we're not going to consult. So we would just send it back. There's no injunction in play. You keep talking about an equitable remedy, and it's not available under the IRS statute. It wouldn't be a requisite here. We're looking at the evidence presented in the case before the IRS, and we're saying it's deficient, if that's what we hope. Your Honor, in any event, it's not deficient. And may I address that? No, no, wait. What's wrong with that? I'm not going to make sure I leave here understanding your concern because I do not get it. Your Honor. If the record ‑‑ let me put it this way. Suppose the record is this. They come in, same information, and the IRS says, we don't like you, and so you're not getting a refund. Do you think equitable relief is somehow a bar toward the court saying, that's not good enough? No, Your Honor. We can give them relief, right? It's just a matter of what statute provides this court the ability to say that's not good enough. You mean under 7422, the court couldn't say in that situation where the IRS said, we don't like you, and so we're not giving you a refund? Your Honor, that's how we read the Cohen case. If this court disagrees, then whatever statute, and if the court further thinks, which of course we would disagree that the reasoning is inadequate or arbitrary in some way, then whichever statute is used to remand to the agency for further proceedings is used to remand to the agency for further proceedings. The outcome is the same. Right. But it wouldn't change the fact that the court is not able at this time to outright award a refund. It would just be a return to the IRS for further proceedings and perhaps consultation. You're fighting a fight I haven't even gotten to yet. You're trying to anticipate their answer. I'm trying to understand your theory of the case. In my hypothetical, you don't doubt for a minute. Put yourself on the other side. If you present it, you don't doubt for a minute that you could get an order from this court sending the case back to the IRS or an order from the district court sending the case back to the IRS and saying this is inadequate. Your Honor, we don't dispute that if it is inadequate, they can get an order from this court sending it back to the IRS saying this is inadequate. Under 7422? Yes, under 7422. If the court believes that Cohen is not a bar to that remedy, then we agree it could be done under 7422, Your Honor. Okay. May I address the merits of the letter very briefly, Your Honors? Briefly, but I do have a question before you do, and that is you said that after consultation, that the consultation could be outcome determinative. So how do you read Article 22.6? Because I thought that the IRS could still, even after consultation, deny the benefits. Are you reading may as shall? No, Your Honor. Our reading of Article 22.6 is that if the IRS reaches a tentative conclusion that it wishes to grant benefits, it consults the Swiss, and after taking the view of the Swiss competent authority into account, the IRS will then make a final determination on whether to grant or deny benefits. But it may still not grant it. Yes, absolutely, Your Honor. Regardless of what the Swiss say. Yes, that's correct. That's correct. As to the merits, this notion that the competent authority somehow didn't respond to major issues raised by STAR was first raised in STAR's reply brief and has therefore been waived. Hang on. Before we even get to this, because I don't know how to analyze the merits until, can you tell me by pointing to the determination letter, the agency decision at issue here, what the legal test for a principle purpose was that it applied? It was applied, Your Honor. No, how did they decide? Because the briefing has very different visions of what a principle purpose means. There may be even third and fourth options for what a principle purpose means under this treaty. And so I'm trying to find where in the determination letter they explain what a principle purpose means. The determination letter doesn't explain that, Your Honor. But a principle purpose everywhere it's used in tax law, as illustrated by all of the cases and the other regulations that reside in our brief, means one of the principle purposes. And, in fact, the technical explanation says one of the principle purposes. So I get that a doesn't mean the. So I'll give you that. But I'm still confused as to what it means to be a principle purpose for the move because at least I understood your brief, and this is not in the determination, so there may be a generic problem. But the brief seemed to be saying they had a chart, and one of the factors they were thinking about was U.S. taxes. So that made it a principle purpose. Is that what you mean? Is that the legal test for a principle purpose that you think is correct and you think that's what was applied here? Your Honor, the test is, was this a major purpose? Was it one of the factors that weighed heavily, to use the language from the Seventh Circuit and the Santa Fe. No, but that's not from this determination letter. It was treaty. No, Your Honor. But remember, at the time this determination letter was issued, no one knew whether these determinations were even judicially reviewable or if they were what standard would be. When you say weighed heavily, does it have to weigh heavily in favor of moving to Switzerland? Or could a principle purpose for moving to Switzerland be something that weighed heavily against moving to Switzerland? Your Honor, given the test here is the standard and technical explanation was whether the acquisition of treaty benefits was a principle purpose. Right. So under that language, in this treaty, it has to weigh in favor. It has to weigh heavily in favor of moving to Switzerland. Yes, that would be one of the factors that weighed in favor, heavily in favor of moving to Switzerland. It doesn't have to be the. I got a the distinction. Yes. But tax benefits had to weigh heavily in favor of moving to Switzerland. The acquisition of tax benefits under the Treaty of Iran. Right. Yes. The question is not whether Star would be better off in Switzerland than it was in Ireland. The question is not whether Star would be better off in Switzerland than it would be in the United States. The question is, as the District Court held at pages 66 to 67 of the appendix, when Star moved to Switzerland, was one of the principle purposes for locating in Switzerland the acquisition of benefits under the Swiss tax treaty. And so if the chart that they had which said bad under U.S. law, I get they had the parentheses about unless there's an exception. If it had said worst possible outcome and hadn't had the parentheses, it just said worst possible outcome, could that be? And then they moved to Switzerland and they applied for these benefits. Could you still say that that was a principle purpose? No, Your Honor, because the worst possible outcome would be paying the 30% that they would have to pay as a domestic corporation, and that would mean they weren't receiving treaty benefits. And if they can't possibly receive treaty benefits, it can't be. No, in my theory, they moved to Switzerland just like now, and then they've applied for this discretionary grant of treaty benefits. So they do the same thing they did here. The only difference is the chart said bad but didn't have the parentheses underneath about the exception. What would happen then? Your Honor, I think that would still remain in the discretion of the competent authority. So when they say something's bad, they can still say that the reason they went there was for the principle purpose of acquiring that bad tax status? Well, Your Honor, this matrix is a self-serving, after-the-fact reconstruction made specifically to support STARS. Well, that sounds like the evidentiary dispute that you would want to have in district court. We don't have any basis for deciding any of that stuff right now, do we? No. In fact, Your Honor, the district court accepted that this is what the chart wants. And I didn't see the determination letter saying anything about that chart, did it? Not specifically, but the determination letter says that – I'm sorry, Your Honor. No, go ahead. The determination letter says expressly that STARS moved to Switzerland suggests an intent to get treaty benefits. And in the Chiquita Brands v. SEC case, the pin side is 805-F3299, this court made clear that Chenery does not bar agencies from coming into court and elaborating on the reasons in the letters. It doesn't bar agencies from coming into court and citing facts that aren't specifically discussed in the decision document. We just can't go beyond those four sets of circumstances that the competent authority recognized. Which didn't actually find anything. Your Honor, the competent authority expressly found on page – that second page of the determination letter that it was impossible to conclude, based on those four sets of circumstances, that acquiring treaty benefits was not one of STARS' principal purposes in locating Switzerland. No, but they didn't find anything factual in those four bullet points, right? May have done, may have done, and then the wonderful – may or may not have been intentional. So it may or may not have been intentional, so that's evidence of intent. Your Honor, what the competent authority found was that these four factors – the first three are the history of STAR, and then STAR's resemblance to structures that, in 2006, the IRS had recently determined to be abusive, were sufficient to show that STAR had a principal purpose of acquiring tax benefits when it moved to Switzerland. In particular, STAR originally incorporated and located – Where does it say they were abusive? It says, not in accord with recent developments of U.S. policy on acceptable corporate ownership. Your Honor, it is undisputed in this case. As the district court found, this is referring to the IRS's discovery of situations in which U.S. individuals invested in the U.S. through entities set up in treaty countries and other tax havens that were abusive. So this is a reference to those abusive structures, and that's – STAR has not challenged that. The district court held that it is essentially undisputed, and there isn't any challenge to that that's been waived at this point. Can I ask you about this third country resident, whether it's a requirement or not? In your technical explanation of paragraph 6, you say that the reason this provision is included, or this discretionary provision is included in recognition of the fact that there may be cases where significant participation by third-party residents is warranted. Now, that's your only – at least the technical explanation – is the only reason for why 22-6 was promulgated. So what is your position about the presence or not of a third country resident? Your Honor, that's not the only reason that Article 22 was promulgated, and the technical explanation makes clear that it's not. Page 60 of the technical explanation says that all of the tests in Article 22 – Now, where are – Page 60 of the technical explanation, Your Honor. Page what? Page 60. 6-0. And what would that be in the addendum? It's – oh. Or is it – maybe it's – oh, yeah. Okay. I've got 60. I believe it's page 14 of the addendum, Your Honor. Yeah. Okay. Go ahead. Well, that discusses Article 22. Yes, it's Article 22. All right. And you're – and I was discussing the exemption that is paragraph 6. Your Honor, I will get there in one moment, if I may. Okay. All right. Article 22 – the discussion of Article 22 makes clear that all of the tests and the limitations on benefit provisions are intended to root out taxpayers who have a principal purpose of acquiring tax benefits. As opposing counsel conceded here this morning, the mechanical tests, including those that expressly talk about the residence of beneficiaries and whether they're third-country beneficiaries or not, are surrogates for intent. So, really, everything in Article 22 goes to, did you have a principal purpose of obtaining benefits under the treaty when you moved to the United States or Switzerland? Now, on page 72 of the technical explanation, when it talks about paragraph 6, it says persons that establish operations – this is the end of the second paragraph of the discussion of paragraph 6 – persons that establish operations in one of the states with a principal purpose of obtaining the benefits of the Convention ordinarily will not be granted relief under paragraph 6. That, it's undisputed, provides the legal standard. And as the district court held, I believe it's page 54 of the appendix, this is the legal standard. Treaty shopping, which generally involves third-country residents – not always, but generally involves third-country residents – may be the evil at which Article 22 was aimed, but the legal standard is the principal purpose test. Now, because residence and the other mechanical factors are surrogates for intent, the technical explanation in 59-60 makes clear that these mechanical tests carve out the sets of taxpayers that the drafters of this treaty, between the United States and Switzerland, believed could be presumed to be located in a treaty country for something other than a principal purpose of obtaining tax benefits. So therefore, if you don't fall into one of these categories in this treaty, irrespective of what any other treaty may say, then the principal purpose test applies to you. Starr's arguments that really the absence of a third-country resident is determinative mean that it's trying to rewrite the mechanical tests in the treaty to encompass it. Well, it may not be determinative, but your own explanation has recognized that the reason for the exemption is third-country residents, but you have answered my question, so thank you. Okay. Thank you. Any more questions? Okay. Thank you. Does Mr. Madden have any time left? Mr. Madden, do you have any time left? All right. Why don't you take two minutes? Okay. Great. I'd like to pick up right where you left off, which is on this third-country resident point. Every reference to the purpose of Article 22 and to Paragraph 6, when it's describing the actual purpose of the provision, refers to a third-country resident and the concern about funneling benefits to third-country residents. And the structure of this particular provision is, to me, highly relevant to these questions in that the discretion that's afforded to the competent authority is intended to be afforded in the circumstance where a third-country resident has already been identified through the mechanical tests. And as makes very clear on that very page we were just reading, in Paragraph 6, page 72, it starts out by saying, Paragraph 6 provides that a resident of one of the contracting state that is not otherwise entitled to the benefits of the convention may be granted benefits under the convention by the competent authority of the other contracting state. This discretionary provision is included in recognition of the fact that with increasing scope and diversity of international economic relations, there may be cases where significant participation by third-country residents in an enterprise is warranted by business reasons. And by the way, then the very next sentence is the test that we've all been citing. The point being that you're supposed to first identify a third-country resident, and then the competent authority has the discretion. If they had found the Smoking Gun Memo here, in which Starr said, the reason we're going to Switzerland is those great treaty benefits. Maybe they thought they had a mechanic, they fell in mechanically, or they felt really confident they'd get this exercise of discretion, but if they said the reason we're going is for those treaty tax benefits, no third country is anything like that involved. Your position is they still would have to be granted the discretionary benefits? My position is that's completely irrelevant, in fact. No, no, it's very relevant to your interpretation of this treaty provision, where you're trying to say it's only about third countries. No, no, that's right. And they say, no, no, no, no, that's a big problem. It's not the only thing. So your position is it's not the only thing. No, my position is that is the whole point of the treaty. The whole point of the treaty is to find those people who are interested in moving jurisdictions for the purpose of realizing treaty benefits. They are encouraging you to invest in that jurisdiction, rather than in a jurisdiction that doesn't have a U.S. treaty. And so the point is to encourage investment. The notion that if I'm super interested in treaty benefits, then I'm bad, but if I'm just kind of interested, then I'm okay, makes no sense when you think about the underlying purpose. But most importantly, you don't have to get all the way there with me on the notion that it is a per se rule where you need a third country resident. As Judge Henderson pointed out a few minutes ago, the fact that the competent authority, there can't be any question that it's a highly relevant factor, given the prominence it plays in the TE and, by the way, the Senate report. The fact that it's not even mentioned is an indication that the determination letter is arbitrary and capricious. In the three seconds you have left, what's your response on Cohen? On Cohen? Cohen doesn't really have an application here. If you determine that we have an appropriate refund suit, then we don't have a proper APA suit. We think we have a proper refund suit, so we can proceed with 7422. If you determine that we don't have a proper refund suit because of some consultation requirement, then we have a proper APA suit. That's all Cohen stands for as it relates to this case. Okay. Thank you.
judges: Henderson, Millett, Edwards